IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUANTEZ TENNYSON, ) | |
| ) | Civil Action No. 11 - 35 |
| Plaintiff, ) | |
| ) | District Judge Joy Flowers Conti |
| v. ) | |
| ) | |
| LT. ROHRBACHER, C/O III; and MS. ) | |
| KERRI CROSS, Hearing Examiner, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

On January 10, 2011, the above-captioned case was filed in this court and referred to a magistrate judge for pretrial proceedings in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and the Local Rules of Court for Magistrate Judges.

The magistrate judge filed a report and recommendation on November 29, 2011 (ECF No. 20) recommending that defendants' motion to dismiss (ECF No. 9) be granted and that the complaint be dismissed with prejudice without the right to amend. Plaintiff Jauntez Tennyson ("plaintiff") was served with the report and recommendation at his listed address and advised that he had until December 16, 2011 to file written objections to the report and recommendation. No objections were filed within the time allotted. Consequently, on December 22, 2011, this court entered an order granting the motion to dismiss and closing the case (ECF No. 21).

On December 22, 2011, plaintiff filed objections to the report and recommendation (ECF No. 22) and a brief in support (ECF No. 23). For the reasons set forth below, the order dated December 21, 2011 will be vacated and the motion to dismiss will be granted on alternative bases. An appropriate order follows.

1

A. <u>Relevant Procedural History</u>

In his complaint, plaintiff complains about a misconduct that was issued against him on November 19, 2008, charging him with possession of dangerous or controlled substances. He claims that he was placed in prehearing confinement in the restricted housing unit ("RHU") and his custody level was raised to a Level 5, which is the maximum level. Plaintiff further claims that on November 26, 2008, defendant hearing examiner Kerri Cross ("Cross") conducted an *in camera* hearing with defendant Lt. Rohrbacher ("Rohrbacher"), rather than with the confidential source of information ("CSI") who had supplied information to Rohrbacher. Specifically, the CSI told Rohrbacher that he bought drugs from plaintiff and delivered them to the search team. Plaintiff asserts that this *in camera* hearing violated DOC procedures relating to CSIs and denied him his right to cross-examine witnesses. Plaintiff further claims that Rohrbacher issued the misconduct in retaliation for plaintiff's refusal to become a CSI himself.

On April 5, 2011, defendants filed a motion to dismiss complaint (ECF No. 9) and a brief in support (ECF No. 10) wherein they argued, *inter alia*, that plaintiff's claims were barred by the two-year statute of limitations period for filing civil rights claims in Pennsylvania. Plaintiff filed a response to the motion (ECF No. 16) and a brief in support (ECF No. 17). In his response, he makes the bare statement that his "claims are not time barred as explained in his pro se 1983 Civil Complaint form." (ECF No. 16, ¶ 2.) A review of his complaint, however, reveals no discussion concerning the timeliness of his claims. Moreover, he did not include any discussion of the timeliness of his claims in his brief in response to his opposition of defendants' motion.

In her report and recommendation (ECF No. 20), the magistrate judge determined that defendants' motion to dismiss complaint (ECF No. 9) should be granted. Specifically, she concluded that, because plaintiff's complaint was signed and dated December 29, 2010, he could

not seek recovery under 42 U.S.C. § 1983 as to any of the events set forth in his complaint because they occurred outside the applicable statute of limitations period, *i.e.*, over two years prior to his filing the complaint in this case. After plaintiff failed to file any objections within the specified time period, this court granted defendants' motion and adopted the report and recommendation. (ECF No. 21).

Plaintiff filed objections and a brief on December 22, 2011 (ECF Nos. 22, 23) wherein he argues, for the first time, that the limitations period should have been tolled during the time he was exhausting his administrative remedies. Specifically, he claims that he did not receive final review from the appeal of his misconduct until January 15, 2009. Thus, his two-year limitation period should not have expired until January 15, 2011. Consequently, he argues that, because his complaint was signed December 29, 2010, his claims are timely filed.

The Court of Appeals for the Third Circuit has not spoken on the issue. Several courts of appeals, however, have concluded that, because exhaustion is mandatory under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), the statute of limitations applicable to § 1983 actions must be tolled while a prisoner exhausts. *See* Shakuur v. Costello, 230 F. App'x 199, 201 (3d Cir. 2007) (citing Brown v. Valoff, 422 F.3d 926, 942-43 (9th Cir. 2005); Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001); Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000); and Harris v. Hegmann, 198 F.3d 153,158 (5th Cir.1999)). *But see* Braxton v. Zavaras, 614 F.3d 1156, 1162 (10th Cir. 2010) (declining to apply equitable tolling, reasoning that ample time for filing within the two-year limitations period remained after the exhaustion of remedies but that the plaintiff failed to pursue diligently his opportunity to file). Here, this court need not decide whether equitable tolling applies because defendants' motion to dismiss should be granted for the reasons set forth below.

B. Liability under 42 U.S.C. § 1983

Plaintiff asserts liability against defendants pursuant to 42 U.S.C. § 1983. In order to assert liability under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege:  1) the alleged misconduct was committed by a person acting under color of state law; and 2) as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

1.   Due Process

Plaintiff alleges violations of his rights as protected by the Due Process Clause of the Fourteenth Amendment.  In this regard, the Due Process Clause of the Fourteenth Amendment does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner.  Meachum v. Fano, 427 U.S. 215, 224 (1976).  The Due Process Clause shields from arbitrary or capricious deprivation only those facets of a convicted criminal's existence that qualify as "liberty interests."  Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972).  The types of protected liberty interests are not unlimited.  The interest must rise to more than an abstract need or desire and must be based on more than a unilateral hope.  An individual claiming a protected interest must have a legitimate claim of entitlement to it. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979).

Thus, the threshold question presented by plaintiff's claim based upon violations of the Due Process Clause is whether defendants' actions impacted a constitutionally-protected liberty interest.  A liberty interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation.  Hewitt, 459 U.S. at 466.  A liberty interest inherent in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of

liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973). Interests recognized by the Supreme Court that fall within this category include the revocation of parole, Morrissey, 408 U.S. at 471, and the revocation of probation, Gagnon, 411 U.S. at 778. The Due Process Clause, however, does not create an inherent liberty interest to remain free from disciplinary or administrative segregation. *See, e.g.*, Hewitt, 459 U.S. at 468; Montayne v. Haymes, 427 U.S. 236, 242 (1976); Wolff, 418 U.S. at 556; Sheehan v. Beyer, 51 F.3d 1170, 1175 (3d Cir. 1995); Layton v. Beyer, 953 F.2d 839, 845 (3d Cir. 1992). Accordingly, plaintiff can succeed under the Due Process Clause only if a state law or regulation has created a constitutionally-protected liberty interest in his remaining free from administrative detention.

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees. Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483. Applying this test, the Supreme Court concluded that the prisoner in Sandin did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence. In making this determination, the Supreme Court looked at two basic factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive. After reviewing these two factors, the Court concluded that thirty days in disciplinary

detention, which was similar in many respects to administrative custody, did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

Specifically, in deciding whether a protected liberty interest exists under Sandin, a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. Mitchell v. Horn, 318 F.3d 523, 532 (3d Cir. 2003) (citing Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000)). What is an "atypical and significant hardship" is determined by "what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." Sandin, 515 U.S. at 486. If the inmate had no protected liberty interest in remaining free of restricted custody, then the inmate was owed no process, in the form of hearings or otherwise, before or during his placement.

Here, plaintiff received a sanction of sixty days of disciplinary time. Every court, including the Court of Appeals for the Third Circuit, has concluded that confinement in restricted housing for a period of one year or less does not amount to an atypical or significant hardship under the Sandin analysis. *See, e.g.*, Scerbo v. Lowe, 326 F. App'x 652, 656 (3d Cir. 2009) (eighteen-month period of confinement in maximum security custody did not implicate a protected liberty interest); Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir.1997) (exposure to conditions of administrative custody for periods as long as fifteen months falls within the expected parameters of sentence imposed). Moreover, the Court of Appeals for the Third Circuit has held that an inmate sentenced to an aggregate of 930 days in disciplinary confinement did not allege an atypical and significant hardship sufficient to trigger a liberty interest under Sandin. *See* Young v. Beard, 227 F. App'x 138 (3d Cir. 2007). Thus, plaintiff's allegations concerning his confinement in the RHU are not sufficient to support a plausible claim for a violation of his due process rights.

Plaintiff further complains that the *in camera* hearing violated DOC procedures relating to CSIs. Plaintiff, however, has no constitutional liberty interest in defendants following the procedures allegedly mandated by state law. River Park, Inc. v. City of Highland Park, 23 F.3d 164, 166 (7th Cir. 1994) ("the Constitution does not require state and local governments to adhere to their procedural promises"); Wilson v. Formigoni, 42 F.3d 1060, 1066 (7th Cir. 1994) ("[S]tate-created procedural requirements do not, standing alone, constitute protected liberty or property interests or create substantive entitlements.") In other words, simply because the state mandates that certain procedures be complied with does not mean that those procedures are of constitutional significance. As the Court of Appeals for the Third Circuit explained:

> The fact that Pennsylvania regulations provide for hearings after transfer to administrative custody is not relevant to a determination of whether federal procedural due process is required. *See* Hewitt v. Helms, 459 U.S. 460, 470 (1983) (The mere fact that Pennsylvania has created a careful procedural structure to regulate the use of administrative segregation does not indicate the existence of a protected liberty interest.). The process afforded by state law is not relevant in determining whether there is a state created right that triggers due process protection. Olim v. Wakinekona, 461 U.S. 238 (1983). ("The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice, the State does not create an independent substantive right.")

Griffin v. Vaughn, 112 F.3d 703, 709 n. 3 (3d Cir. 1997). Hence, the mere failure to follow state mandated procedures does not deprive plaintiff of a liberty interest.

Finally, neither his prison transfer nor his loss of custody level affects any protected liberty interest. *See* Meachum v. Fano, 427 U.S. 215, 224 (1976) (holding that the Due Process Clause does not independently create a liberty interest in prisoners to be free from intrastate prison transfers); Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976) ("Congress has given federal prison officials full discretion to control [prisoner classification and corresponding housing assignments], and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due

process"); Burns v. PA Dept. of Corrections, 642 F.3d 163, 171 (3d Cir. 2011). Consequently, plaintiff's complaint fails to state a violation of his due process rights and defendants' motion to dismiss should be granted on this basis.

2. Retaliation

Broadly construed, plaintiff's complaint may be interpreted as asserting a claim of retaliation. Specifically, it appears that plaintiff claims that Rohrbacher issued the misconduct in retaliation for his refusal to become a CSI himself. Although defendants did not address this claim in their motion, this court may consider it under the screening provisions set forth in the PLRA. In this regard, as part of the PLRA, Congress granted to federal courts authority for *sua sponte* screening and dismissal of prisoner claims. Specifically, Congress enacted a new statutory provision at 28 U.S.C. § 1915A, entitled "Screening," which requires the court to review complaints filed by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). If the complaint is "frivolous, malicious, or fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such relief," the court must dismiss the complaint. 28 U.S.C. § 1915A(b). In applying this statutory requirement, a federal court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Dodrill, 696 F.Supp.2d 454, 471 (M.D. Pa. 2010).

In order to prevail on a retaliation claim, a plaintiff must show three things: (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. *See* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148,

163 (3d Cir. 1997). If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. Mt. Healthy, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001).

With respect to the first factor, it is well settled that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right. Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). Accordingly, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges he was denied. Rauser, 241 F.3d at 333. The first requirement a plaintiff must show is that the conduct which led to the alleged retaliation was constitutionally protected. *Id*.

Here, plaintiff claims that Rohrbacher issued the misconduct in retaliation for his refusal to become a confidential informant. Neither the United States Supreme Court nor the Court of Appeals for the Third Circuit ever has held that a prisoner enjoys a constitutional right not to become an informant. No other court has specifically so held. *Cf.* David v. Hill, 401 F.Supp.2d 749, 757 (S.D. Tex. 2005) (assuming without deciding that prisoner had a constitutional right not to participate in a prison investigation). Thus, plaintiff has not even alleged the first element of a retaliation claim.

Moreover, even assuming *arguendo* that such a right existed, it was not "clearly established" at the time when the challenged conduct occurred. In this regard, the doctrine of

qualified immunity protects state officials from civil liability for actions performed in the course of their duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 614 (1999). Hence, a defendant is not liable if he did not violate clearly established law or it was objectively reasonable for him to believe that he was not violating clearly established law. Anderson v. Creighton, 483 U.S. 635, 641 (1987). Even if plaintiff had such a right, defendants would be entitled to qualified immunity as such right could not have been clearly established at the time of the alleged conduct. *Accord* Allah v. Juchenwioz, 176 F. App'x 187, 189 (2d Cir. 2006) (holding that, because defendants' conduct in allegedly filing a false misbehavior report in retaliation for plaintiff's refusal to be recruited as an informer did not violate any clearly established constitutional rights, district court did not err in dismissing plaintiff's retaliation claim). Plaintiff's retaliation claim can be dismissed *sua sponte* under the PLRA. An appropriate order follows.

AND NOW, this 24th day of January, 2012;

**IT IS HEREBY ORDERED** that the ORDER dated December 21, 2011 is **VACATED**.

**IT IS FURTHER ORDERED** that the Report and Recommendation (ECF. No. 20) dated November 29, 2011, is **VACATED**.

**IT IS FURTHER ORDERED** that, for the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 9) is **GRANTED**.

**IT IS FURTHER ORDERED** that the complaint is **DISMISSED** with prejudice and it would be futile to allow plaintiff the opportunity to amend.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of

Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

                By the court:

                /s/ Joy Flowers Conti
                Joy Flowers Conti
                United States District Judge


cc:    Juantez Tennyson, EF-7297
       SCI Dallas
       1000 Follies Road
       Dallas, PA 18612